## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, Inc., | ) CIVIL ACTION NO.: |
| | ) |
| | ) |
| Plaintiff | ) JUDGE: |
| v. | ) |
| | ) |
| BP AMERICA, Inc.; BP EXPLORATION & PRODUCTION, Inc.; BP, PLC; TRANSOCEAN Ltd.; TRANSOCEAN, Inc.; and TRANSOCEAN OFFSHORE USA, Inc., | ) MAGISTRATE: |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants | ) |
| | ) |

## COMPLAINT

### INTRODUCTION

1.      This is a civil action brought under the citizen suit provision of the Federal Water Pollution Control Act, 33 U.S.C. §1365, commonly known as the Clean Water Act ("CWA"). Defendants have discharged oil and toxic pollutants into the Gulf of Mexico, into the contiguous zone and other waters of the United States, in violation of §§ 301(a) and 306 of the CWA, 33 U.S.C. §§1311(a) and 1316.

2.      Since April 20, 2010, millions of gallons of oil have spewed from BP's ruptured well a mile under the sea surface into the Gulf of Mexico, a fragile and productive ecosystem with diverse communities of fish and wildlife and home to several species of endangered whales, sea turtles, and sea birds. Current estimates place the daily flow of oil between 35,000 and 65,000 barrels a day, which amounts to about 1.5 to 2.5 million gallons per day.  Oil is washing ashore along the coasts of Louisiana, Alabama, and Florida. Hundreds of dead birds, sea turtles, and dolphins are also being collected onshore, meanwhile most of the harmful effects of the spill are out of sight beneath the sea surface. The oil spill is the worst environmental disaster in U.S. history.

3.      It is undisputed that responsibility for the oil spill rests primarily on BP and that efforts to stop the leak have failed.  The oil and toxic pollutants flowing into the Gulf of Mexico are a plain violation of the Clean Water Act which is the nation's strongest law protecting water quality.

4.      Plaintiff seeks a declaratory judgment, injunctive relief, remedial relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 33 U.S.C. § 1365(a) and (b).  The effects of the BP oil spill have significantly impacted the people, wildlife, waters, coastal environment, and economy of the state of Louisiana, the entire Gulf of Mexico region and likely well beyond.  The relief requested is authorized pursuant to 33 U.S.C. §§ 1319(d), 1321(b), 1365(a), (b) and (d), and 28 U.S.C. §§ 2201 and 2202.

2

6.     In compliance with 33 U.S.C. § 1365(b)(1), on June 1, 2010, Plaintiff gave notice of certain violations and of its intent to file immediate suit to the Defendants, to the Administrator of the U.S. Environmental Protection Agency (EPA), to the Regional Administrator of the EPA, and to all other required entities.  A copy of the notice letter is attached hereto as Exhibit A.  A supplemental notice was served on June 4, 2010 concerning violations of section 306 of the CWA, 33 U.S.C. § 1316.  A copy of the supplemental notice letter is attached hereto as Exhibit B.  *See* 33 U.S.C. § 1365(b) (allowing citizen suit to be brought immediately after notification where there are violations of sections 1316 and 1317(a) of the CWA).

7.     Immediate notice of discharges in violation of national standards of performance was served, and the violations complained of in the notice are continuing at this time, and are reasonably likely to continue.  Defendants remain in violation of the CWA.  Neither the EPA nor any other governmental entity has commenced or is diligently prosecuting a civil or criminal action in a court to redress the violations.

8.     Venue is appropriate in the Eastern District of Louisiana pursuant to 33 U.S.C. § 1365(c)(1), because the sources of the violations complained of have originated in the contiguous zone of the United States and the impacts of the discharges have been felt so heavily by the people and state of Louisiana from the oily waters of the Gulf of Mexico that have reached Louisiana.

## PLAINTIFF

9.     Plaintiff, Center for Biological Diversity ("the Center"), is a nonprofit corporation organized under the laws of the State of New Mexico.  The Center's principal office is located in Tucson, Arizona.  The Center has over one hundred members within the state of Louisiana,

3

thousands of members in the Gulf region, and many additional members who regularly visit and recreate in Louisiana and other Gulf states that have been and continue to be affected by the BP oil spill.

10.     Plaintiff's members reside throughout the Gulf region, including the coastal areas of Louisiana especially impacted by the pollutants discharged as part of the oil spill from the Deepwater Horizon facility.  Plaintiff's members specifically use, recreate in and enjoy these areas in the following ways:

      a.      The Center's members live within the Gulf coastal zone impacted by discharges from Defendants' facilities;

      b.      The Center's members engage in economic and recreational activities – including but not limited to fishing, swimming, hiking, walking and boating – in and around the waters impacted by discharges from Defendants' facilities;

      c.      The Center's members observe and enjoy wildlife in the Gulf in the areas impacted by Defendants' discharges;

      d.      The Center's members have an aesthetic and health interest in keeping the waters in the Gulf free of oil and toxic and hazardous pollutants.

      e.      The Center's members swim and fish in the waters and breathe the air into which Defendants' release the oil and toxic pollutants which they have discharged and failed to properly report.  Such oil and toxic pollutants are known to cause deleterious effects to human health and wildlife and interfere with members' use and enjoyment of property.

11.     The Center is a non-profit organization with over 40,000 members, and over 3,500 in the

Gulf of Mexico region. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center has standing in this suit to protect its own interests and those of its individual members in a representative capacity. The Center's organizational purposes, and the interests of its members, are adversely affected by Defendants' discharges of oil and other pollutantswhich degrade waters and adjacent lands, including the habitat for threatened and endangered aquatic species, and impair the habitability, recreational value, and economic and aesthetic benefits of the local communities.

12.     Defendants' discharges alleged herein have adversely affected and continue to adversely affect the Center's members' above-described use and enjoyment of the waters, air and land affected by Defendants' discharges and releases.

13.     Enforcement of the CWA will help restore and preserve water quality, thereby promoting the objectives of the Clean Water Act and the Center, and provide protection of the use and enjoyment of the area by the Center's members.

**DEFENDANTS**

14.     Defendant BP, PLC is a British based for-profit corporation organized under the laws of the United Kingdom and doing business in the United States as itself and various subsidiaries also named herein. BP America, Inc. is a for-profit wholly-owned corporate subsidiary of BP, PLC, organized under the laws of the state of Delaware. BP Exploration & Production, Inc. is a for-profit wholly-owned corporate subsidiary of BP, PLC, organized under the laws of the state of Delaware. Both BP America, Inc. and BP Exploration & Production, Inc. have their principal places of business in Warrenville, Illinois. The various BP Defendants (hereinafter referred to

collectively as "BP") own the Mississippi Canyon Block 252 license and/or lease.  BP leased the Deepwater Horizon rig from Transocean, Ltd., and operates, or operated, the rig in the Gulf of Mexico.

15.     Defendant Transocean, Ltd. is the owner of the Deepwater Horizon rig.  Transocean Ltd. is a for-profit corporation organized under the laws of Switzerland.  Transocean Inc. is a for-profit corporation organized under the laws of the Cayman Islands, with its principal United States place of business in Texas.  Transocean Inc. is a wholly-owned subsidiary of Transocean Ltd. with an address of P.O. Box 2765, Houston, TX 77252-2765.  Transocean Offshore USA, Inc. is incorporated in the state of Delaware and is a wholly-owned subsidiary of Transocean, Ltd and Transocean, Inc.

## FACTS

16.     The Deepwater Horizon rig and wells are new source offshore oil exploration and production facilities subject to national effluent standards, as authorized by statute and defined by federal regulations.  33 U.S.C. § 1316; 40 C.F.R. Part 435.  Offshore facilities are considered point sources under the CWA.  33 U.S.C. § 1362(14).

17.     Defendants began drilling operations on the Deepwater Horizon rig in the Gulf of Mexico in February, 2010.

18.     On April 20, 2010, oil and toxic pollutants began discharging from Defendants' Deepwater Horizon rig and other sources into the Gulf of Mexico.  Since the discharges began, estimates have varied that from 5,000 to over 200,000 barrels of oil are being discharged into the Gulf of Mexico every day.

19.    Section 301 of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States and its contiguous zone unless such discharge is permitted by a National Pollution Discharge Elimination System ("NPDES") permit.

20.    Defendants' discharges are not permitted in any NPDES permit and, are prohibited in their entirety by 40 C.F.R. Part 435. No free oil or associated toxic pollutants are allowed to be discharged under any circumstances. Any NPDES general permit does not, and cannot, allow such discharges.

21.    Upon information and belief, Plaintiff alleges that Defendants have repeatedly discharged and continue to discharge oil and associated toxic pollutants through a point source or point sources into waters of the United States, the contiguous zone, and the territorial seas in the Gulf of Mexico. The discharges are reaching coastal wetlands, beaches, estuaries and rivers in Louisiana and other Gulf states.

22.    Upon information and belief, Plaintiff alleges that Defendants' point sources include but are not limited to the rig itself, and all pipes associated with the well construction, and the operation and production of the Deepwater Horizon facility. The exact point sources, in addition to the well itself, are known to BP.

23.    Based on available information, over 100 million gallons of oil, toxic pollutants and other pollutants have been discharged into the Gulf of Mexico from the BP spill since April 20, 2010.

24.    Satellite images show that the various surface oil slicks and sheens believed to be associated with the BP spill cover as much as 23,140 square miles (about the size of West

Virginia), and continue to grow.

25.     The BP spill is having devastating impacts on fish and wildlife.  Hundreds of dead birds, sea turtles, dolphins and other wildlife have been collected from the Gulf and its coastline since the spill.  The dead seabirds so far found on the shores of Louisiana, Mississippi and Alabama include gannets, herons and brown pelicans.

26.     The die-off of wildlife in the Gulf's marshes, beaches and coastal waters is expected to continue for months and possibly years.

27.     The BP spill threatens some of the most productive and fragile marine ecosystems in the United States.  About 25 percent of the nation's wetlands lie in the Mississippi River Delta, providing habitat for nesting seabirds and resting migratory birds.

28.     The state of Louisiana has identified 210 birds, reptiles, amphibians, and mammals likely to be affected by the spill, including about a dozen threatened and endangered species.  Another 445 fish and invertebrate species will also be impacted.  No estimate exists yet for the number of corals and plants such as sea grass and wetland vegetation likely to be adversely affected.

29.     On May 22, 2010, reporters observed heavy oil coating a pelican colony near North Breton Island off the Louisiana coast.  By June 7, 2010, heavy oil had soaked the Queen Bess Island pelican rookery, a nesting site that has been essential to the recovery of the brown pelican population.  Experts worry that the spill could set back the Louisiana state bird's recovery from near-extinction.

30.     Plumes of oil are spreading beneath the surface of the Gulf, which is feared could devastate zooplankton and invertebrate communities at the base of the aquatic food chain.

Researchers have traced an underwater oil plume that, as of early June 2010, was 15 miles wide, 3 miles long and about 600 feet thick.  The plume's core was 1,100 to 1,300 meters below the surface.

31.     Initial tests show that some of the most toxic components of the oil are not rising to the surface where they could evaporate, but rather are drifting through deep water in plumes or layers that stretch as far as 50 miles from the leaking well.

32.     Bacteria are breaking down some of the oil's hydrocarbons in the underwater plumes, which has resulted in oxygen levels being severely depleted.  Oxygen levels are plunging close to what is considered "dead zone" conditions, at which most marine life suffocate for lack of dissolved oxygen.

33.     Researchers have also measured extremely high levels of methane, which is also spewing from the gushing BP well at up to 10,000 times background levels in Gulf waters.

34.     The BP spill is resulting in devastating impacts to local communities.  Louisiana's $2.4 billion seafood industry is responsible for up to 40% of the seafood caught in the continental United States, and is the leading producer of oysters, crab, crawfish and shrimp.  As of June 8, 2010, 78,264 square miles of the Gulf, which is roughly 32% of the federal waters in the Gulf, are under a federal fishery closure due to the BP spill.

35.     Over 100 miles of Louisiana's coastline have been affected by the BP spill.  Oil and tar balls are also showing up on the shores of Alabama, Mississippi, and the Florida panhandle region.

36.     Oil reaching the shores of Louisiana is causing headaches, burning eyes, and nausea among the people who live there and more serious illness among cleanup workers.

37.     Dozens of people in Louisiana have been hospitalized with health problems blamed on airborne toxic chemicals in the air in the month after oil began to flood the Gulf of Mexico from the gushing point sources.  Those exposed to the growing oil spill include residents, cleanup workers and relief aid workers.

38.     As of June 15, 2010, BP had applied more than 882,,000 gallons of chemical dispersants to the surface, and has pumped another 402,000 gallons of chemical dispersants into the water column in an attempt to dilute the oil.  The environmental effects of using chemical dispersants at such depths and in such enormous quantities have never been tested.

39.     Upon information and belief, Plaintiff alleges that Defendants have discharged and continue to discharge, pollutants, including but not limited to, oil and toxic pollutants.  Discharge of the toxic pollutants, as identified in 40 C.F.R. § 401.15, likely include, but are not limited to, benzene, toluene, naphthalene, polynuclear aromatic hydrocarbons (PAHs)(including, but not limited to, phenanthrene, benzanthracenes, benzopyrenes, benzofluoranthene, chrysenes, dibenzanthracenes, and indenopyrenes), fluoranthene, arsenic, cadmium, copper, mercury and nickel.  The discharges of these toxic pollutants may be added to an amended complaint at the appropriate time.

40.     Upon information and belief, BP has analyzed and knows the exact concentrations of each of the toxic pollutants present in the oil coming from its wells.

41.     Defendants have discharged and continue to discharge toxic pollutants in large quantities.

The pollutants discharged and the likely ranges of discharges are as follows:

| Chemical | Range of presence (in pounds per million gallons of oil) | | |
|---|---|---|---|
| | low | high | average |
| Benzene | 1,595 | 19,216 | 7,643 |
| Toluene | 7,209 | 45,909 | 23,056 |
| Ethylbenzene | 5,509 | 9,569 | 6,698 |
| Arsenic | -- | -- | 14 |
| Nickel | -- | -- | 8 |
| Fluoranthene | 22 | 26 | 24 |
| Benz(a) anthracene | 12 | 39 | 21 |
| Benzo(b) fluoranthene | 3 | 15 | 10 |
| Benzo(k) fluoranthene | 1 | 5 | 3 |
| Benzo(e) pyrene | 8 | 29 | 17 |
| Benzo(a) pyrene | 2 | 4 | 3 |
| Indeno(1, 2, 3) cd pyrene | 0 | 5 | 1 |
| Dibenzo(a, h) anthracene | 0 | 2 | 2 |
| Naphthalene (total) | 2,321 | 71,497 | 36,169 |
| Chrysene (total) | 61 | 1,689 | 894 |
| TOTALS | 16,765 | 146,316 | 73,669 |

42.    Upon information and belief, other pollutants, which include toxic pollutants listed in 40 C.F.R. § 401.15, were present at and discharged from the Deepwater Horizon facility when it exploded on April 20, 2010.

43.    The release of these toxic pollutants also exceeds the reportable quantities of hazardous

substances required to be reported under the CWA, 33 U.S.C. § 1321(b)(2)(A), the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C.§ 9603(a), and the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004.

44.    The Mississippi Canyon area of the Gulf of Mexico, into which Defendants have discharged and are reasonably likely to continue to discharge oil and other toxic pollutants, is part of the "contiguous zone" as defined in 33 U.S.C. § 1362(9) and  40 C.F.R. § 122.2.

45.    These discharges commenced on April 20, 2010, are continuing, and will likely continue for many months.

46.    Upon information and belief, Plaintiff alleges that Defendants have discharged oil, produced water, and other toxic pollutants in violation of the national standards of performance for new sources for offshore facilities promulgated pursuant to the authority of 33 U.S.C. § 1316(b) and set forth at 40 C.F.R. Part 435.

47.    Upon information and belief, Plaintiff alleges that Defendants' discharges alleged herein are prohibited by 40 C.F.R. Part 435, and actionable as violations of national standards of performance pursuant to 33 U.S.C. § 1316(e).  Such national standards of performance for discharges to the contiguous zone constitute "effluent standards or limitations," 33 U.S.C. 1362(11), subject to enforcement.

## ALLEGATIONS
### COUNT 1
**Discharge of Pollutants in Violation of National Standards of Performance,
33 U.S.C. § 1316**

48.     Plaintiff realleges paragraphs 1-47.

49.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants

from a point source into the contiguous zone, navigable waters of the United States, unless

pursuant to the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C.

§ 1342.

50.     Defendants have discharged and continue to discharge pollutants, including oil and other

toxic pollutants, from one or more point sources in the Gulf of Mexico into the contiguous zone

and waters of the United States in violation of the CWA.  The Defendants' discharges are not

permittable under the CWA and violate national policy.  33 U.S.C. § 1251(a)(3).

51.     By discharging pollutants in violation of national standards of performance for offshore

facilities into the contiguous zone and waters of the United States as detailed herein, Defendants

have violated and continue to violate sections 301(a) and 306 of the CWA, 33 U.S.C. §§ 1311(a)

and 1316.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff the following relief:

a.     Issue a declaratory judgment that Defendants have violated and continue to violate the

CWA, as alleged herein;

b.     Enjoin Defendants from operating their offshore facility in such manner as will result in

further violation of the CWA.  In particular, Plaintiff seeks an order enjoining Defendants from

13

discharging any further pollutants to the contiguous zone and other waters of the United States;

c.      Order Defendants to immediately divulge the complete list and amounts of toxic pollutants contained in the oil and other releases from the Deepwater Horizon rig and wells;

c.      Order Defendants to pay civil penalties of up to $1,100 per barrel (or up to $4,300 per barrel if the violations were the result of gross negligence or willful misconduct) or $37,500 per day of violation, whichever is greater, pursuant to sections 309(d), 311(b)(7)(A) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d), 1321(b)(7)(A) and 1365(a), including violations listed in Exhibit B, those identified in this complaint and violations committed subsequent to those identified in this complaint;

d.      Authorize the Plaintiff, for the period beginning on the date of the Court's order and running for five years after the Defendants achieve compliance with the CWA, to sample or arrange sampling of any discharge of pollutants from the wells in question, with the costs of the sampling to be borne by Defendants;

e.      Order Defendants to provide Plaintiff, for a period beginning on the date of the Court's order and running for five years after Defendants achieve compliance with the CWA, with a copy of all reports and other documents which Defendants submit to appropriate regulatory authorities concerning the allegations set forth herein;

f.      Issue a remedial injunction ordering Defendants to pay the cost of any environmental restoration or remediation deemed necessary and proper by the Court to ameliorate the degradation caused by Defendants' violations;

g.      Award Plaintiff its costs, including reasonable attorney and expert witness fees, as authorized by 33 U.S.C. § 1365(d) and 28 U.S.C. § 2412(d); and

h.      Award such other relief as this Court deems appropriate.


Respectfully submitted this 18th day of June, 2010,


/s/Damon A. Kirin_____
Damon A. Kirin, LSBA 24729
Diliberto & Kirin, L.L.C.
3636 S. I 10 Service Rd., W., Ste  210
Metairie, LA 70001
Tel: (504) 828-1600
Fax (504) 828-1555
kirin@attorneys-louisiana.com

15